

**U.S. Department of Justice**

*Joshua S. Levy*
*Acting United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

September 28, 2023

John S. Day, Esq.
Day Law Firm, P.C.
33 Railroad Avenue, Suite 1-4
Duxbury, MA 02332

    Re:    <u>United States v. Nicolas Davila</u>
           Criminal No. 23-CR-10127-LTS

Dear Attorney Day:

    The United States Attorney for the District of Massachusetts (the "U.S. Attorney") and your client, Nicolas Davila ("Defendant"), agree as follows, pursuant to Federal Rule of Criminal Procedure ("Rule") 11(c)(1)(B):

    1.    <u>Change of Plea</u>

Defendant will plead guilty to Counts One, Three, Four and Twelve of the Indictment:

- Count One, Conspiracy to Transport Stolen Property Valued Over $5,000 in Interstate Commerce, in violation of 18 U.S.C. § 371;

- Count Three, Interstate Transportation of Stolen Property Valued Over $5,000, in violation of 18 U.S.C. § 2314;

- Count Four, Interstate Transportation of Stolen Property Valued Over $5,000, in violation of 18 U.S.C. § 2314; and

- Count Twelve, Possession of Cocaine with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1).

    Defendant admits that Defendant committed the crimes specified in these counts and is in fact guilty of each one.

1

The U.S. Attorney agrees not to charge Defendant with the following: Racketeering Conspiracy, in violation of 18 U.S.C. § 1962(d); Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances in violation of 21 U.S.C. § 846; and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c), based on the conduct underlying the crimes charged in this case that is known to the U.S. Attorney at this time.

2. Penalties

Defendant faces the following maximum penalties:

a. Conspiracy to Transport Stolen Property Valued Over $5,000 in Interstate Commerce, in violation of 18 U.S.C. § 371: not more than five years in prison, up to three years of supervised release, a fine of up to $250,000, a $100 special assessment, forfeiture, and restitution.

b. Interstate Transportation of Stolen Property Valued Over $5,000, in violation of 18 U.S.C. § 2314: not more than ten years in prison, up to three years of supervised release, a fine of up to $250,000, a $100 special assessment, forfeiture, and restitution.

c. Possession of Cocaine with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1): not more than twenty years in prison, at least three years of supervised release up to life, a fine of up to $1,000,000, a $100 special assessment, forfeiture, and restitution.

Defendant understands that, if Defendant is not a United States citizen by birth, pleading guilty may affect Defendant's immigration status. Defendant agrees to plead guilty regardless of any potential immigration consequences, even if Defendant's plea results in being automatically removed from the United States.

3. Sentencing Guidelines

The U.S. Attorney agrees to take the position, based on the following calculations, that Defendant's total "offense level" under the Guidelines is 23:

(a) *Offense Level Group One - Counts One, Three and Four:*

a) Defendant's base offense level is 6 (USSG § 2B1.1(a)(2));

b) Defendant's offense level is increased by 10, because Defendant is responsible for a loss amount greater than $150,000 (USSG § 2B1.1(b)(1)(F));

c) Defendant's offense level is increased by 2, because the offense involved more than 10 victims (USSG § 2B1.1(b)(2)(A)(i));

d) Defendant's offense level is increased by 2, because the offense involved

receiving stolen property, and the defendant was a person in the business of receiving and selling stolen property (USSG § 2B1.1(b)(4));

e) Defendant's offense level is increased by 2, because the offense involved sophisticated means (USSG § 2B1.1(b)(10)(C));

f) Defendant's offense level is increased by 2, because the offense involved an organized scheme to steal vehicle parts (USSG § 2B1.1(b)(15)); and

g) Defendant's offense level is increased by 2, because the offense involved the possession of a dangerous weapon (including a firearm) in connection with the offense (USSG § 2B1.1(b)(16)(B).

h) Total Offense Level: 26.

(b) *Offense Level Group Two - Count Twelve*

a) Defendant's base offense level is 12, because Defendant is responsible for at least 5 KG but less than 10 KG of Converted Drug Weight[1] (USSG § 2D1.1(c)(6)); and

b) Defendant's offense level is increased by 2, because a dangerous weapon (including a firearm) was possessed (USSG § 2D1.1(b)(1)).

c) Total Offense Level is 14.

(c) *Grouping*

Pursuant to USSG § 3D1.2(b) & (c), Count One, Count Three and Count Four are closely related and form a single group (Group One). Count One, Count Three, and Count Four are not closely related to Count Twelve, and Count Twelve forms a separate group (Group Two). Pursuant to USSG § 3D1.3(a), the offense level applicable to the Group is the offense level for the most serious of the counts comprising the Group, which is Count One.

The Adjusted Offense Level for Group One is 26. The Offense Level for Group Two is 14. The Offense Level of Group One is more than 9 levels greater than Group Two. Therefore, Group One comprises one Unit, and Group Two comprises zero Units. See USSG § 3D1.4(c) ("Disregard any Group that is 9 or more levels less serious than the Group with the highest offense level."). Application of the grouping principals does not increase the Total Offense Level. See USSG §8 3D1.4(c).

---

[1] This converted drug weight is based upon 14.193 grams of cocaine.

(d)     *Acceptance of Responsibility*

Based on Defendant's prompt acceptance of personal responsibility for the offense of conviction in this case, the U.S. Attorney agrees to recommend that the Court reduce Defendant's Total Adjusted Offense Level by 3 levels under USSG § 3E1.1.

Defendant understands that the Court is not required to follow this calculation or even to sentence Defendant within the Guidelines and that Defendant may not withdraw Defendant's guilty plea if Defendant disagrees with how the Court calculates the Guidelines or with the sentence the Court imposes.

Defendant also understands that the government will object to any reduction in Defendant's sentence based on acceptance of responsibility if: (a) at sentencing, Defendant (directly or through counsel) indicates that Defendant does not fully accept responsibility for having engaged in the conduct underlying each of the elements of the crimes to which Defendant is pleading guilty; or (b) by the time of sentencing, Defendant has committed a new federal or state offense, or has in any way obstructed justice.

If, after signing this Agreement, Defendant's criminal history score or Criminal History Category is reduced, the U.S. Attorney reserves the right to seek an upward departure under the Guidelines.

Nothing in this Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

4.      **Agreed Disposition**

The U.S. Attorney agrees to recommend the following at sentencing:

   a) incarceration for not more than 60 months;

   b) no fine;

   c) 36 months of supervised release;

   d) a mandatory special assessment of $400, which Defendant must pay to the Clerk of the Court by the date of sentencing;

   e) restitution to be determined; and

   f) forfeiture as set forth in Paragraph 6.

The parties agree to request that the Court order the sentence to commence immediately, and that it be permitted to run concurrently with any sentence later imposed on Hampden Superior Court Docket No. 2379CR00367.

Defendant agrees that all criminal monetary penalties, including special assessment, restitution, forfeiture, and/or fine imposed shall be due and payable immediately, and further agrees that any Court-ordered repayment schedule does not preclude further enforcement or collection by the United States.

5. <u>Waiver of Appellate Rights and Challenges to Conviction or Sentence</u>

Defendant has the right to challenge Defendant's conviction and sentence on "direct appeal." This means that Defendant has the right to ask a higher court (the "appeals court") to look at what happened in this case and, if the appeals court finds that the trial court or the parties made certain mistakes, overturn Defendant's conviction or sentence. Also, in some instances, Defendant has the right to file a separate civil lawsuit claiming that serious mistakes were made in this case and that Defendant's conviction or sentence should be overturned.

Defendant understands that Defendant has these rights, but now agrees to give them up. Specifically, Defendant agrees that:

a) Defendant will not challenge Defendant's <u>conviction</u> on direct appeal or in any other proceeding, including in a separate civil lawsuit; and

b) Defendant will not challenge Defendant's <u>sentence,</u> including any court orders related to forfeiture, restitution, fines or supervised release, on direct appeal or in any other proceeding, including in a separate civil lawsuit.

Defendant understands that, by agreeing to the above, Defendant is agreeing that Defendant's conviction and sentence will be final when the Court issues a written judgment after the sentencing hearing in this case. <u>That is, after the Court issues a written judgment, Defendant will lose the right to appeal or otherwise challenge Defendant's conviction and sentence regardless of whether Defendant later changes Defendant's mind or finds new information that would have led Defendant not to agree to give up these rights in the first place.</u>

Defendant is agreeing to give up these rights in exchange for concessions the U.S. Attorney is making in this Agreement.

The parties agree that, despite giving up these rights, Defendant keeps the right to later claim that Defendant's lawyer rendered ineffective assistance of counsel, or that the prosecutor or a member of law enforcement involved in the case engaged in misconduct serious enough to entitle Defendant to have Defendant's conviction or sentence overturned.

6. Forfeiture

Defendant understands that the Court will, upon acceptance of Defendant's guilty plea, enter an order of forfeiture as part of Defendant's sentence, and that the order of forfeiture may include assets directly traceable to Defendant's offense, assets used to facilitate Defendant's offense, substitute assets and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

The assets to be forfeited specifically include, without limitation, the following:

a. A Glock Model 27, .40 caliber firearm, bearing serial number VWS784;
b. One round of .40 caliber ammunition;
c. Eleven (11) rounds of .22 caliber ammunition;
d. Two (2) bolt cutters, one (1) yellow and one (1) red;
e. Milwaukee Sawzall, 3 batteries, various blades; and
f. Milwaukee Sawzall E2 Battery Charger;

Defendant admits that these assets are subject to forfeiture on the grounds that they constitute, or are derived from, proceeds of Defendant's offense, they were used to facilitate Defendant's offense, and/or they were involved in Defendant's offense. Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant understands and agrees that forfeiture shall not satisfy or affect any fine, lien, penalty, restitution, cost of imprisonment, tax liability or any other debt owed to the United States.

Defendant agrees to assist fully in the forfeiture of the foregoing assets. Defendant agrees to promptly take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. Defendant further agrees (a) not to assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding, and (b) to testify truthfully in any such proceeding.

If the U.S. Attorney requests, Defendant shall deliver to the U.S. Attorney within 30 days after signing this Plea Agreement a sworn financial statement disclosing all assets in which Defendant currently has any interest and all assets over which Defendant has exercised control, or has had any legal or beneficial interest. Defendant further agrees to be deposed with respect to Defendant's assets at the request of the U.S. Attorney. Defendant agrees that the United States Department of Probation may share any financial information about the Defendant with the United States Attorney's Office.

Defendant also agrees to waive all constitutional, legal, and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement.

Defendant hereby waives and releases any claims Defendant may have to any vehicles, currency, or other personal property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets.

7.  Civil Liability

This Plea Agreement does not affect any civil liability, including any tax liability, Defendant has incurred or may later incur due to Defendant's criminal conduct and guilty plea to the charges specified in Paragraph 1 of this Agreement.

8.  Breach of Plea Agreement

Defendant understands that if Defendant breaches any provision of this Agreement, violates any condition of Defendant's pre-trial release or commits any crime following Defendant's execution of this Plea Agreement, Defendant cannot rely upon such conduct to withdraw Defendant's guilty plea. Defendant's conduct, however, would give the U.S. Attorney the right to be released from the U.S. Attorney's commitments under this Agreement, to pursue any charges that were, or are to be, dismissed under this Agreement, and to use against Defendant any of Defendant's statements, and any information or materials Defendant provided to the government during investigation or prosecution of Defendant's case—even if the parties had entered any earlier written or oral agreements or understandings about this issue.

Defendant also understands that if Defendant breaches any provision of this Agreement or engages in any of the aforementioned conduct, Defendant thereby waives any defenses based on the statute of limitations, constitutional protections against pre-indictment delay, and the Speedy Trial Act, that Defendant otherwise may have had to any charges based on conduct occurring before the date of this Agreement.

9.  Who is Bound by Plea Agreement

This Agreement is only between Defendant and the U.S. Attorney for the District of Massachusetts. It does not bind the Attorney General of the United States or any other federal, state, or local prosecuting authorities.

10. Modifications to Plea Agreement

This Agreement can be modified or supplemented only in a written memorandum signed by both parties, or through proceedings in open court.

\*   \*   \*

If this letter accurately reflects the agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Philip A. Mallard.

Sincerely,

JOSHUA S. LEVY
Acting United States Attorney

By: *Timothy C. Moran*
Timothy E. Moran
Chief, Organized Crime Gang Unit
Michael Crowley
Deputy Chief, Organized Crime Gang Unit

*Philip A. Mallard*
Philip A. Mallard
Assistant U.S. Attorney

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter and discussed it with my attorney. The letter accurately presents my agreement with the United States Attorney's Office for the District of Massachusetts. There are no unwritten agreements between me and the United States Attorney's Office, and no United States government official has made any unwritten promises or representations to me in connection with my guilty plea. I have received no prior offers to resolve this case.

I understand the crime) I am pleading guilty to, and the maximum penalties for those crimes. I have discussed the Sentencing Guidelines with my lawyer, and I understand the sentencing ranges that may apply.

I am satisfied with the legal representation my lawyer has given me, and we have had enough time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Agreement and whether I should go to trial.

I am entering into this Agreement freely and voluntarily and because I am in fact guilty of the offenses. I believe this Agreement is in my best interest.

_____
Nicolas Davila
Defendant

Date: 10/4/23

I certify that Nicolas Davila has read this Agreement and that we have discussed what it means. I believe Nicolas Davila understands the Agreement and is entering into it freely, voluntarily, and knowingly. I also certify that the U.S. Attorney has not extended any other offers regarding a change of plea in this case.

_____
John Day, Esq.
Attorney for Defendant

Date: 4 OCT 2023

9