UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.: 1:23-cr-10127-LTS |
| | ) | |
| NICOLAS DAVILA | ) | |

**MOTION FOR DOWNWARD DEPARTURE AND/OR VARIANCE AND
INCORPORATED SENTENCING MEMORANDUM FILED BY DEFENDANT
NICOLAS DAVILA**

On October 13, 2023, Defendant Nicolas Davila came before this Honorable Court and

pled guilty to the following criminal charges:

1.  Conspiracy to Transport Stolen Goods Valued Over $5,000 in Interstate or
    Foreign Commerce, in violation of 18 U.S.C. §§ 371 and 2314 (1 count);

2.  Interstate Transportation of Stolen Goods, in violation of 18 U.S.C. § 2314 (2
    counts); and,

3.  Possession of Cocaine with Intent to Distribute, in violation of 21 U.S.C. §§
    841(a)(1) and 841(b)(1)(C) (1 count).

See Presentence Investigation Report ("PSR"), at pp. 1-2 and ¶¶2-3.

For the reasons set forth below, Mr. Davila respectfully files this Motion and

Incorporated Sentencing Memorandum that requests:

1.  a downward departure from the Sentencing Guidelines to a sentence of 22 months
    incarceration with supervised release for three years; and/or,

2.  a sentencing variance to a sentence of 22 months with supervised release for three
    years, which is "sufficient, but not greater than necessary, to comply with the
    purposes of sentencing".  See 18 U.S.C. §3553(a).

Mr. Davila is a remorseful young man who has never been incarcerated before and has

conscientiously responded to this prosecution by completing twenty-nine (29) rehabilitative

programs since his arrest on April 12, 2023, and he remains involved with educational and

restorative justice programs offered by Wyatt Detention Facility. <u>See</u> PSR, at ¶4. Consequently, while Mr. Davila fully understands the gravity of his criminal offenses, his mature decision to learn from this situation and concomitant commitment to leading a productive life suggest a sentence below the Guidelines range of 30 to 37 months is "sufficient, but not greater than necessary, to comply with the purposes of sentencing" and appropriately reflects "the nature and circumstances of the offense and the history and characteristics of the defendant". <u>See</u> 18 U.S.C. § 3553(a)(1). Moreover, as further addressed below, Mr. Davila currently is subject to a very serious Massachusetts Superior Court indictment, and his right to fully and expeditiously defend himself against that indictment may be unduly delayed by a federal prison sentence that is within the Guidelines range of 30 to 37 months.

## I.      MR. DAVILA'S PERSONAL BACKGROUND

### A.      <u>Family Circumstances</u>

Mr. Davila was born on December 29, 1997, and is currently 26 years old. <u>See</u> PSR, ¶286. He grew up in a stable family home with his parents, three siblings, and three cousins for whom his parents had custody. <u>See</u> PSR, ¶286. The family had some challenges associated with mental illness but, as Mr. Davila noted during the presentence investigation, he never suffered from any abuse and he never observed any financial hardship. <u>See</u> PSR, ¶286. Indeed, Mr. Davila considers his parents to be his "best friends". <u>See</u> PSR, ¶286.

Mr. Davila's parents remain supportive of him, as illustrated by the letter that his mother, Mildred, has written on behalf of herself and her husband, Rafael Davila, Sr. <u>See</u> Letter of Mildred Davila, attached hereto as Exhibit 1. As Mrs. Davila explains, she and Mr. Davila raised Nicolas with strong positive values and are embarrassed by his decision to commit the instant offenses, but they nevertheless are hopeful this loss of freedom has been a learning experience

that has led Nicolas to positive self-reflection. See Exhibit 1. Indeed, Mr. and Mrs. Davila "are proud of the work [Nicolas] has put in while being detained and hope that he is driven when he is released from custody [to] obtain employment and live a productive life."  See PSR, at ¶287.

Similarly, Mr. Davila's aunt, Marisol Duff, recognizes that her nephew has made a poor decision by engaging in these offenses, but she also notes that he is "a good father to his baby daughter" and confirms she remains proud of the person he has always been. See Letter of Marisol Duff, attached hereto as Exhibit 2.  Mr. Davila's lifelong sense of commitment to his family is further reflected in the letters written by Vanessa Robles and Jose Maldonado, two of the cousins with whom he lived as a child.  See Letter of Vanessa Robles, attached hereto as Exhibit 3; Letter of Jose Maldonado, attached hereto as Exhibit 4.  Ms. Robles notes that Mr. Davila "is ready to prove his potential and abilities to demonstrate who he really is because he is a bright and smart young man", and Mr. Maldonado similarly describes Mr. Davila as a loving person with a good heart who is deeply devoted to his family. See Exhibits 3 and 4.

Mr. Davila is also the father of a little girl who was born in September 2022, and his daughter's mother, Gineva Lugo, is a certified nursing assistant who describes Mr. Davila as "a great person who goes above and beyond for people." See PSR, at ¶¶288-289. As discussed in the PSR, Ms. Lugo "has noticed a change in the defendant since his arrest for the instant offense, indicating that although he always financially provided for their child, he was not always present in their lives." See PSR, at ¶289. She misses Mr. Davila and hopes that he "uses this time to be productive and earn his way home to be with his family." See PSR, at ¶289.

### B.    Mr. Davila's Demonstrable Commitment to Rehabilitation

As established by the preceding section, Mr. Davila's loved ones continue to support him and are confident he can recover from this situation and live a meaningful and productive life. Of

course, while the support and confidence of his family members is a blessing, Mr. Davila now

realizes that success requires self-discipline and consequential work by him, and he has

enthusiastically accepted this challenge.

More specifically, Mr. Davila has been in custody for 11 months since he was arrested on

April 12, 2023 and has completed the following 29 programs during this time:

1.      Rational Thinking 2023;
2.      A Student Guide to Drug and Alcohol Abuse;
3.      Adapting to Change;
4.      CERT;
5.      CERT Firefighter Rehab Operations;
6.      Child Abuse Prevention and Awareness;
7.      Choosing the Best Solution;
8.      Construction Safety & Hazards;
9.      Creativity and Innovation;
10.     Creativity and Innovations: Creative Thinking Basics;
11.     Creativity and Innovations: Creativity in Organizations;
12.     Creativity and Innovations: Fostering a Creative Environment;
13.     Creativity and Innovations: Personal Creativity;
14.     Creativity and Innovations: Promoting Team Creativity;
15.     Critical Thinking and Decision-Making;
16.     Domestic Abuse;
17.     Drug-Free Work Place;
18.     Effective Health and Safety Committees;
19.     Elements of an Effective Safety and Health Program;
20.     Excavation and Trenching Awareness;
21.     Indoor Air Quality;
22.     Introduction and Understanding of OSHA;
23.     Math-Unit l: Tools;
24.     Managing Stress;
25.     Marchman Act: The Florida Substance Abuse Impairment Act;
26.     Money Basics;
27.     Office Safety and Health;
28.     Substance Abuse; and,
29.     The Safe Food Handler.

See PSR, at ¶4.

In addition to completing these 29 programs, Mr. Davila remains engaged in both a detainee-run

restorative judgment program and the following educational pursuits:

1. Introduction to the GED;
2. Math Unit 2;
3. Introduction to Real Numbers; and,
4. Making Your Home a Safer Place.

<u>See</u> PSR, at ¶4.

As Mr. Davila explains in the letter attached hereto as Exhibit 5, he realizes that his conduct has caused pain to himself and others, including "my daughter and parents who needed me the most." <u>See</u> Exhibit No. 5.  He now realizes that he was "brought up with 2 working parents" who consistently taught him the important values of "working hard, being responsible, being respectful" and the need to "love one another, follow rules, [and] treat others as you want to be treated." <u>See</u> Exhibit No. 5. While Mr. Davila admits that he committed the crimes that bring him before this Court and accepts that his criminal conduct requires a criminal sentence, he has already started to work on a life after prison by completing the multiple educational and rehabilitative programs listed above. Indeed, the persistent work that Mr. Davila has performed, and continues to perform, is consistent with this simple but eloquent self-assessment of both his past and his future:

> I also caused pain to others, and my daughter and parents who needed me the most. Losing my youngest brother changed all our lives. My parents needed me the most. The last thing they needed was for me to do the wrong thing and land in prison. They still need me, my daughter needs me. I need them. If I could do it all over again and get a second chance my life and my thinking of what I want to do for my future would be to work, take care of my family and never look back.

<u>See</u> Exhibit No. 5.

## II.    MR. DAVILA'S INVOLVEMENT IN THE INSTANT CRIMINAL CONDUCT

As detailed in the PSR, the catalytic converter thefts at issue in this prosecution involve six defendants, including Mr. Davila. <u>See</u> PSR, at ¶5. The offenses spanned approximately eleven months, from March 7, 2022 until April 11, 2023, and involved the theft of 496 catalytic

converters <u>See</u> PSR, at ¶64. The PSR identifies eighty-two (82) distinct dates/locations of thefts. <u>See</u> PSR, at ¶64.

Mr. Davila participated on three (3) of these dates, during a 13-day span that began on November 22, 2022 and ended on December 6, 2022.  <u>See</u> PSR, at ¶64. Perhaps not surprisingly, given his very limited temporal involvement in the overall scheme, Mr. Davila also had a relatively limited role with regard to the number of stolen catalytic converters and the estimated loss amount. More specifically, Mr. Davila's involvement is reflected by the following chart that compares his conduct to his co-defendants' conduct:

| Name | Number of Vehicles | Estimated Loss Value | Reference |
|------|-------------------|---------------------|-----------|
| Jose Torres | Approximately 700 | $3,500,000 | PSR, ¶241 |
| Rafael Davila | 496 | $2,480,000 | PSR, ¶236 |
| Zachary Marshall | 113 | $565,000 | PSR, ¶239 |
| Carlos Fonseca | 103 | $515,000 | PSR, ¶237 |
| Santo Feliberty | 52 | $260,000 | PSR, ¶240 |
| Nicolas Davila | 42 | $210,000 | PSR, ¶238 |

## III.    MOTION FOR A DOWNWARD DEPARTURE AND/OR VARIANCE

The PSR calculates a total offense level of 18 and a criminal history category of II, with a corresponding sentencing guidelines range of 30 to 37 months. <u>See</u> PSR, at ¶317. While Mr. Davila does not raise any objection to this calculation, he respectfully moves for a downward departure and/or variance with a sentence of 22 months incarceration to be followed by three years of supervised release.

A.     <u>**General Authority of this Court regarding Sentencing**</u>

This Honorable Court is well aware that district court judges have broad discretion, in

the wake of <u>United States v. Booker</u>, 543 U.S. 220 (2005) and its progeny, to fashion case-

specific sentences that reflect the specific characteristics of the defendant and the offense.  <u>See</u>,

<u>e.g.</u>, <u>United States v. Booker</u>, 543 U.S. 220 (2005), <u>Gall v. United States</u>, 128 S.Ct. 586 (2007),

and <u>Kimbrough v. United States</u>, 128 S.Ct. 558 (2007).  This broad discretion has been

repeatedly, and vigorously, endorsed by the First Court.  <u>See</u>, <u>e.g.</u>, <u>United States v. Taylor</u>, 532

F.3d 68, 69 (1st Cir. 2008) ("The Court's decision in <u>Gall</u>, combined with its decisions in

<u>Kimbrough</u> [citation omitted]  and <u>Rita v. United States</u>, 127 S.Ct. 2456 (2007), makes clear

that in the post-<u>Booker</u> world, district judges are empowered with considerable discretion in

sentencing . . . ."); <u>United States v. Boardman</u>, 528 F.3d 86, 87 (1st Cir. 2008) (district court

has "broader freedom than it did before <u>Kimbrough</u>"); <u>United States v. Rodriguez</u>, 527 F.3d

221, 225 (1st Cir. 2008) ("In <u>Gall</u>, . . . the Justices expounded further on a district court's

authority to vary from the guidelines, emphasizing that district courts have wide latitude in

making individualized sentencing determinations"); <u>United States v. Politano</u>, 522 F.3d 69, 73

(1st Cir. 2008) ("In view of the Supreme Court's recent decision in <u>Gall</u>, we emphasize that the

broad discretion afforded to the district court is paramount"); <u>United States v. Martin</u>, 520 F.3d

87, 90 (1st Cir. 2008) ("<u>Gall</u> makes clear that courts of appeals must grant district courts wide

latitude in making individualized sentencing determinations").

Although <u>Booker</u> and its progeny have greatly expanded the authority of district court

judges to vary from the Sentencing Guidelines, the Supreme Court has imposed one

noteworthy limit on this broad discretion – namely, district court judges may not presume that

the Guidelines provide the appropriate sentence in a given case. <u>See</u>, <u>e.g.</u>, <u>Nelson v. United</u>

States, 555 U.S. 350, 352 (2009) ("Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable.") Of course, the Fair Sentencing Act of 2010 and the First Step Act of 2018 further underscore our nation's ongoing commitment to criminal justice sentences that carefully weigh both the defendant's individual characteristics and the specific aspects of the criminal conduct.

### B. Individual Factors regarding the Appropriate Sentence for Mr. Davila

Against this legal backdrop, the factual circumstances surrounding both Mr. Davila's offense conduct and his demonstrated commitment to rehabilitation support a sentence of 22 months imprisonment followed by three years of supervised release. More specifically, Mr. Davila's participation in the catalytic converter thefts was relatively limited, and he has maturely responded to this prosecution by taking every opportunity to prepare for his and his family's future.

As this Court knows, the general objectives of sentencing envision "the need for the sentence imposed-

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the defendant; and

    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]"

See 18 U.S.C. 3553(a)(2). These enumerated factors must, in turn, be applied in a manner that ensures the imposed sentence is "sufficient, *but not greater than necessary*, to comply with the purposes of

sentencing". <u>See</u> 18 U.S.C. §3553(a). [Emphasis added.]

 Mr. Davila has never been incarcerated before this current detention. <u>See</u> PSR, at ¶¶275-278. As noted above, he has responded to this – his first – period of detention by actively engaging in rehabilitative activities while remaining free of any disciplinary reports. <u>See</u> PSR, at ¶4. Moreover, he was indicted for murder by the Massachusetts Superior Court on October 25, 2023, while he has been detained on the instant matter but involving an alleged act on December 31, 2022. <u>See</u> PSR, at ¶283.  This pending Massachusetts indictment is relevant because Mr. Davila has a due process interest in defending himself against indictment in a thorough and expeditious manner but, as this Court knows, the Massachusetts state court proceeding may be delayed while Mr. Davila is serving a federal prison sentence.

 In light of the foregoing, an incarcerated sentence of 22 months – which is nearly 2 years long and approximately 75% of the bottom GSR range of 30 months – is "sufficient, but not greater than necessary", to justly punish this young man who has responded so maturely to his first period of detention and, frankly, needs to focus his full attention on a potentially life-altering Superior Court indictment as soon as possible.

IV.     **CONCLUSION**

For the reasons set forth above, Mr. Davila respectfully moves this Honorable Court to impose a sentence of 22 months imprisonment to be followed by supervised release for a period of three years.

Respectfully submitted,
**NICOLAS DAVILA**
By his attorney,

/s/ John S. Day
_____
John S. Day (BBO #639249)
Day Law Firm, P.C.
33 Railroad Avenue, Suite 4
Duxbury, MA 02332
781-789-3001 (telephone)
Date:   March 8, 2024             jday@daylaw.com (e-mail)

**CERTIFICATE OF SERVICE**

I, John S. Day, hereby certify that, on March 8, 2024, this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and to United States Probation Officer Carolyn Patten.

/s/ John S. Day
_____
John S. Day, Esquire