**AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANTS**

I, Special Agent Tyler Delorme, being first duly sworn, depose and state as follows:

1.      My background and supporting information are contained in the Exhibits attached to this affidavit. Those Exhibits should be considered incorporated by reference and attachment. Additional information concerning this investigation is set forth in forth in the Exhibit 1, Exhibit 2, Exhibit 3, Exhibit 4, Exhibit 5, and Exhibit 6, which should be considered incorporated into this affidavit by reference and attachment.  My basis of knowledge and the sources of information for this affidavit are the same as those set forth in detail in the attached Exhibits. This affidavit does not set forth all of the information known to me in the course of this investigation. Rather, I have set forth sufficient information supporting probable cause for the issuance of the requested search warrants.

## I.      PURPOSE OF AFFIDAVIT

2.      As further described in Exhibit 1, Exhibit 2, Exhibit 3, Exhibit 4, and Exhibit 5, to this Affidavit, FBI, MSP and other agencies are investigating Rafael DAVILA ("DAVILA" or "R. DAVILA"), Jose TORRES, a/k/a "Goldy", Nicolas DAVILA ("N. DAVILA"), Santo FELIBERTY, Alex OYOLA, a/k/a "Dirty" a/k/a "D", Carlos FONSECA, Zachary MARSHALL, and other coconspirators (the "TARGETS") for violations of 18 U.S.C. §§ 371, 2312, 2314, 2315 (interstate transportation of vehicles, interstate transportation of stolen property and receipt of stolen property in interstate commerce), 18 U.S.C. § 2113(b) (theft from a federally insured bank), 18 U.S.C. §§ 1956, 1957 (money laundering and expenditure of funds derived from suspected unlawful activity), and conspiracy to commit those offenses (hereinafter the "ORIGINAL OFFENSES").  On April 6, 2023, warrants issued for the arrest of Rafael DAVILA, Jose TORRES, Nicolas DAVILA, Santo FELIBERTY, Alex OYOLA, Carlos FONSECA, or Zachary MARSHALL in relation to the ORIGINAL OFFENSES. *See* 23-MJ-5178-JGD. Those cases have since been Indicted, and two of the Defendants have since pleaded guilty.  *See United States v. Davila, et. al.,* 23-CR-10127-LTS; *United States v. Oyola*, 23-CR-10128-PBS.  Nicolas DAVILA also faces a separate count of Possession of Cocaine with Intent to Distribute in the Indictment, 23-CR-10127-LTS for the cocaine recovered at 163 Trafton Street, Springfield, MA.

3.     I make this affidavit in support of an application for search warrants under Fed. R. Crim. P. 41 to search the following six cellular phones (three phones belonging to Rafael DAVILA, and three phones belonging to Nicolas DAVILA) for, in addition to the ORIGINAL OFFENSES listed above, evidence of firearm, racketeering, and drug offenses, specifically 18 U.S.C. §§ 922(g) (felon in possession of a firearm), 922(n) (possession of a firearm while facing criminal charges carrying a penalty exceeding one year), 922(k) (possession of a stolen firearm), 924(c) (use and carrying of a firearm during and in relation to a drug crime or crime of violence) 924(o) (conspiracy to use and carrying of a firearm during and in relation to a drug crime or crime of violence); 18 U.S.C. § 1962 (racketeering and conspiracy to conduct enterprise affairs through a pattern of racketeering activity); 21 U.S.C. §§ 841 and 846 (relating to distribution of controlled substances, and conspiracy to distribute controlled substances). The ORIGINAL OFFENSES and the additional racketeering, drug and firearm offenses will hereinafter be referred to, collectively, as the TARGET OFFENSES).  Investigators are seeking authority to search the following cellular phones for evidence of the TARGET OFFENSES:

a.  23-MJ-5320: a Red iPhone 13 with black case, Model: A2482, SN: L9XM59DN90, FBI # 1B72, bearing IMEI 358469528534634, seized from 799 S. West Street, Feeding Hills, MA, believed to be owned and utilized by Rafael DAVILA ("RAFAEL PHONE 1"), more particularly described in Attachment A-1. There is probable cause to believe that RAFAEL PHONE 1 contains fruits, and evidence of the TARGET OFFENSES, and is an instrumentality of the TARGET OFFENSES, as described in Attachment B.

b.  23-MJ-5321: a Black iPhone 7 in black case, Model: A1660, SN: F4GT47NDHG6W, FBI # 1B73, bearing IMEI 355833080664886, seized from 799 S. West Street, Feeding Hills, MA, believed to be owned and utilized by Rafael DAVILA ("RAFAEL PHONE 2"), more particularly described in Attachment A-2. There is probable cause to believe that RAFAEL PHONE 2 contains fruits, and evidence of the TARGET OFFENSES, and is an instrumentality of the TARGET OFFENSES, as described in Attachment B.

c.  23-MJ-5322: a Gray iPhone 11, Model: A2111, SN: DNPC25B0N72J, FBI # 1B101, bearing IMEI 356550105737625, seized from 799 S. West Street, Feeding Hills, MA, believed to be owned and utilized by Rafael DAVILA ("RAFAEL PHONE 3"), more particularly described in Attachment A-3. There is probable cause to believe that RAFAEL PHONE 3 contains fruits, and evidence of the TARGET OFFENSES, and is an instrumentality of the TARGET OFFENSES, as described in Attachment B.

d.  23-MJ-5323: a Black iPhone 11 in black case, Model: A2111, SN: FFWJ9T2DN72J, FBI # 1B132, bearing IMEI 352563740567228 seized from 163 Trafton Street, Springfield, MA, believed to be owned and utilized by Nicolas DAVILA ("NICOLAS PHONE 1"), more particularly described in Attachment A-4. There is probable cause

to believe that NICOLAS PHONE 1 contains fruits, and evidence of the TARGET OFFENSES, and is an instrumentality of the TARGET OFFENSES, as described in Attachment B.

e.  23-MJ-5324: a Black iPhone X in black case, Model: A1865, SN: DNPVTFV0JCL6, FBI # 1B136, bearing IMEI 353055090300465, seized from 163 Trafton Street, Springfield, MA, believed to be owned and utilized by Nicolas DAVILA ("NICOLAS PHONE 2"), more particularly described in Attachment A-5. There is probable cause to believe that NICOLAS PHONE 2 contains fruits, and evidence of the TARGET OFFENSES, and is an instrumentality of the TARGET OFFENSES, as described in Attachment B.

f.  23-MJ-5325: a Pink iPhone 7 Plus, Model: A1784, SN: FCGTW29GHG07, FBI # 1B144, bearing IMEI 353818088899248, seized from 163 Trafton Street, Springfield, MA, believed to be owned and utilized by Nicolas DAVILA ("NICOLAS PHONE 3"), more particularly described in Attachment A-6. There is probable cause to believe that NICOLAS PHONE 3 contains fruits, and evidence of the TARGET OFFENSES, and is an instrumentality of the TARGET OFFENSES, as described in Attachment B.

4.  During the course of the investigation, search warrants issued for, *inter alia*, 799 S West Street, Feeding Hills, MA, which was the residence of Rafael DAVILA and where he was taken into custody, and 163 Trafton Street, Springfield, MA, which was the address of Nicolas DAVILA and where he was taken into custody. *See e.g.*, 23-MJ-5180 to 5197 (Dein, J.). Those warrants were executed on April 12, 2023.

a.  As noted in Exhibit 5 to this Affidavit, investigators located a loaded firearm in the CHEVROLET SUBURBAN utilized by Rafael DAVILA and located two additional loaded firearms in 799 S. West Street, Springfield, MA, which is Rafael DAVILA's residence.  Investigators also seized three cellular phones belonging to Rafael DAVILA, more particularly described above, that are believed to contain evidence of the TARGET OFFENSES (the "RAFAEL DAVILA PHONES"). The RAFAEL DAVILA PHONES are currently stored at the FBI's office at 201 Maple Street, Chelsea, MA.  The firearms recovered from

b.  As noted in Exhibit 5, investigators located approximately 25 grams of cocaine and a Glock 27 .40 caliber firearm in 163 Trafton Street, Springfield, MA. This particular firearm has marking indicating it was manufactured in Austria. Investigated learned that the firearm had been reported stolen by a relative of Nicolas DAVILA. Investigators also seized three cellular phones belonging to Nicolas DAVILA from the premises, more particularly described below, that are believed to contain evidence of the TARGET OFFENSES (the "NICOLAS DAVILA PHONES"). The NICOLAS DAVILA PHONES are currently stored at the FBI's office at 201 Maple Street, Chelsea, MA.

5.  As described in the Exhibits, Rafael DAVILA is a convicted felon, and has been for many years. Therefore, his possession of a firearm is a violation of 18 U.S.C. § 922(g)(1).

3

6.      Additionally, on April 12, 2023, Nicolas DAVILA was then on pretrial release for a domestic violence offense that carries a penalty of two and one-half years in jail (Springfield Docket No. 2223CR6257, charging violation of Mass. Gen. Law c. 265, § 13M), and his possession of a firearm, therefore, is a violation of 18 U.S.C. § 922(n).  Furthermore, the firearm recovered on April 12, 2023, had been reported stolen from a residence in Palmer, Massachusetts (a potential violation of 18 U.S.C. § 922(k)) and found in the same residence as controlled substances and distribution paraphrenalia (a potential violation of 18 U.S.C. § 924(c)).

7.      Additionally, investigators have learned that on August 28, 2023, an Indictment was issued by a Hampden County Grand Jury charging Nicolas DAVILA with the December 31, 2022, murder of Geovanni Saldana (M.G.L. c. 265, § 1), armed assault with intent to murder of a second surviving victim named Irving Echevarria (M.G.L. 265, § 18(b)), and unlicensed possession of a firearm (M.G.L. c. 269, § 10(a)) related to an incident that took place in Springfield, Massachusetts (Hampden County Superior Court, Docket No. 2379CR00367).  According to an initial police report (Springfield Report 22-16242-OF) and other information learned from investigating officers, the murder weapon believed to have used by Nicolas DAVILA to commit the murder was a Springfield armory XD SC (sub-compact) Mod 2 9mm firearm bearing serial number GM776359 that was reported stolen from Westfield, Massachusetts on April 12, 2022.

   a.   Investigators are familiar with the preliminary facts of incident. The murder took place in the midst of the investigation, while surveillance and active court-authorized tracking was being conducted. Investigators learned of the murder and were informed that Rafael DAVILA travelled to the scene of the murder in the hours after it was reported and had words with investigating officers. Investigators also learned that Nicolas DAVILA changed cars and utilized the Maroon ACURA MDX in the days following the December 31, 2022, murder. Investigators know that Nicolas DAVILA used the Maroon ACURA MDX to travel to a local hotel, where he stayed for a number of days following the murder. During this period after the murder, a court-authorized GPS tracking device was attached to the Maroon ACURA MDX and showed it to be parked at this hotel.

8.      Based upon the commission of numerous catalytic converter thefts, the transportation of those stolen converters across state lines and the laundering of the funds, the murder described above, and ongoing drug distribution being committed by the TARGETS, investigators believe that the DAVILA Crew

is an enterprise, that is, an association in fact that has committed a pattern of racketeering activity in furtherance of the enterprise affairs.  Specifically, among the constituent offenses within the definition of racketeering activity under 18 U.S.C. 1961(1) are: acts involving murder, violations of 18 U.S.C. §§ 1956 (relating to the laundering of monetary instruments) and 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity), violation of 18 U.S.C. §§ 2312 and 2313 (relating to interstate transportation of stolen motor vehicles); 18 U.S.C. §§ 2314 and 2315 (relating to interstate transportation of stolen property); and the manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance.

9.     Collectively RAFAEL PHONE 1, RAFAEL PHONE 2, RAFAEL PHONE 3, NICOLAS PHONE 1, NICOLAS PHONE 2, and NICOLAS PHONE 3 will be referred to as the TARGET PHONES.[1]

## II.     TECHNICAL INFORMATION ABOUT SMARTPHONES

10.     The TARGET PHONES are currently being stored by the FBI at its office at 201 Maple Street, Chelsea, Massachusetts.  From my training and experience and the training and experience of law enforcement personnel who routinely handle this equipment, I understand that the TARGET PHONES have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as when it first came into the investigators' possession.

11.     Based on my training, experience, and information provided by other law enforcement officers, I know that many smartphones (which are included in Attachment B's definition of "hardware") can now function essentially as small computers.  iPhones, such as the TARGET PHONES, are a type of smartphone.  Smartphones have capabilities that include serving as a wireless telephone, digital camera, portable media player, GPS navigation device, sending and receiving text messages and e-mails, and storing

---

[1] Investigators have reviewed reports generated during the extraction of the TARGET PHONES concerning the social media accounts, email accounts, phone numbers, and other associations for each of the TARGET PHONES. Review of this information confirms that RAFAEL PHONE 1, RAFAEL PHONE 2, and RAFAEL PHONE 3 were associated with accounts and phone numbers known to be used by RAFAEL DAVILA, and that NICOLAS PHONE 1, NICOLAS PHONE 2, and NICOLAS PHONE 3 were associated with accounts and phone numbers known to be used by NICOLAS DAVILA.

a vast range and amount of electronic data.  Examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

12.     As a general matter, from my training, experience, and information provided to me by other agents, I am aware that individual who commit crimes such as the TARGET OFFENSES in the context of a social circle of other criminals, carry out, communicate about, and store records regarding their daily activities on cellular phones.  These tasks are frequently accomplished through sending and receiving e-mail, text messages, and other forms of internet-based messages; scheduling activities; arranging travel; purchasing items; searching for information on the internet; accessing personal accounts including banking information and social media accounts; and creating and storing images and videos of their crimes, proceeds, profits, movements and activities.

13.     Based upon my training and experience and evidence developed through this investigation, I know that RAFAEL DAVILA and NICOLAS DAVILA routinely use the internet and cellular phones to communicate and coordinate their commission of the TARGET OFFENSES, and document activities that constitute evidence of the TARGET OFFENSES. Additionally, I know from review of text messages and other media gathered during this investigation that RAFAEL DAVILA and NICOLAS DAVILA have discussed firearms and drugs through text messages. I know that the TARGET PHONES will contain evidence of firearm possession and use, narcotics trafficking, theft and other TARGET OFFENSES.  As such, there is probable cause to believe that the TARGET PHONES are instrumentalities of the TARGET OFFENSES and contain evidence of the TARGET OFFENSES, including evidence related to the firearm and drug offenses.

14.     I know, based upon my training and experience, as well as consultation with other investigators, that individuals who engage in the TARGET OFFENSES, and the drug and firearm offenses in particular, typically use cellular telephones to communicate with each other, the suppliers of controlled substances and firearms, their customers, and with other coconspirators, and that they communicate both via both voice calls and via email and/or text messaging.  I also know that persons who illegally possess and use firearms and narcotics, and commit acts of violence, regularly keep records of their illegal activities

and coordinate their illegal activity both before and after the crimes they commit.  These records can include, but are not limited to, contact lists of buyers and sellers, ledgers of sales and money owed by customers or to suppliers, and lists of quantities and/or specific descriptions of firearms, controlled substances and ammunition to be obtained for specific customers, and communications between persons coordinating the possession of weapons, ammunition and commission of violent acts with the weapons.

15.      Individuals engaged in illegal firearms activities and drug crimes often take photographs of the firearms and transmit those photographs to their coconspirators, rivals, customers, and the general public in order to expand their notoriety and reputation.  Records of firearms and narcotics trafficking activities can be produced and maintained by electronic means on a cellular telephone.  In this case, investigators know from review of RAFAEL DAVILA's iCloud account, the RAFAEL DAVILA PHONES and the NICOLAS DAVILA PHONES that RAFAEL DAVILA and NICOLAS DAVILA frequently employ cellular phones to communicate concerning the TARGET OFFENSES and coordinate the commission of the TARGET OFFENSES.  From my training and experience, and information provided to me by other agents, I am aware that individuals commonly store records of the type described in Attachment B on cellular telephones, and that these types of records and information can provide evidence of the TARGET OFFENSES.

16.      From my training, experience, and information provided to me by other agents, I am aware that individuals frequently use computers and cellular phones to create and store records of their actions by communicating about them through e-mail, instant messages, and updates to online social-networking websites; drafting letters; keeping their calendars; arranging for travel; storing pictures; researching topics of interest; buying and selling items online; and accessing their bank, financial, investment, utility, and other accounts online.

17.      Additionally, I know that those committing the TARGET OFFENSES and dealers in controlled substances often use cellular telephones in order to communicate quickly and economically with their coconspirators, suppliers, and customers via the internet.  I am also aware that individuals frequently use cellular telephones and computers to create and store records of their actions by communicating with

others through e-mail, electronic messages, and updates to online social-networking websites; keeping their calendars; arranging for travel; storing pictures; researching topics related to dealing in controlled substances and illegal firearms trafficking, including amounts, prices, makes, models, prices, caliber and other related information; and accessing their bank, financial, investment, utility, and other accounts online. Additionally, many cellular phones today have a GPS navigation device on the phone. Examination of the GPS data on a cellular phone can provide valuable evidence as to the locations where conspirators met, and acts were taken in furtherance of the TARGET OFFENSES.

18.     Based upon my training and experience, and information provided to me by others involved in the forensic examination of cellular telephones, I know that electronic data on cellular telephones and computers can be stored in a variety of methods, including, but not limited to, within the memory of the cellular telephone or computer; within volatile memory, such as RAM; or on removable media, such as memory cards.

19.     Based on my knowledge, training, experience, and information provided to me by other agents, I know that data can often be recovered months or even years after it has been received, written, downloaded, saved, deleted, or viewed locally or over the Internet. This is true because:

    a.    Electronic files that have been downloaded to a storage medium can be stored for years at little or no cost. Furthermore, when users replace their electronic equipment, they can easily transfer the data from their old device to a new one.

    b.    Even after files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a device, the data contained in the file often does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data, which might not occur for long periods of time. In addition, the device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

    c.    Wholly apart from user-generated files, electronic storage media often contains electronic evidence of how the device has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files. It is technically possible to delete this information, but users typically do not erase or delete this evidence because special software is typically required for that task.

    d.     Similarly, files that have been viewed over the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are overwritten only as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

20.     Based on the information known prior to searching the TARGET PHONES, there is probable cause to believe that evidence of the TARGET OFFENSES is located on the TARGET PHONES, and that the TARGET PHONES are instrumentalities of the TARGET OFFENSES. This information includes text messages between RAFAEL DAVILA and NICOLAS DAVILA concerning the possession of firearms and the distribution of controlled substances. *See* Exhibit 1, pp. 18-22, ¶39 (discussing purchasing kilogram of drugs and distributing it), Exhibit 5, p. 6 ¶13 (discussing a firearm incident over text messages).

## III.    SEARCHES OF THE TARGET PHONES

21.     Since the completion of the extraction process for the TARGET PHONES, investigators have commenced review of the TARGET PHONES pursuant to the previously-issued search warrants. During the course of those examinations, evidence of the TARGET OFFENSES was identified in all of the TARGET PHONES, including text messages, photographs, videos, notes, and other types of evidence. Furthermore, review of the TARGET PHONES has demonstrated that they are in fact instrumentalities of the TARGET OFFENSES.

### A.    RAFAEL PHONE 1

22.     Investigators have commenced the preliminary review of RAFAEL PHONE 1 and located evidence of the TARGET OFFENSES. RAFAEL PHONE 1 was associated with the 6609 PHONE NUMBER, the FASTLIFE413 Snapchat Account, and the THEPARTCLOUD@GMAIL.COM email account discussed in the attached Exhibits. RAFAEL PHONE 1 was also associated with a WhatsApp account named "Robbinhood" consistent with the alias utilized by RAFAEL DAVILA.

### B.    RAFAEL PHONE 2

23.     Investigators have commenced the preliminary review of RAFAEL PHONE 2 and located evidence of the TARGET OFFENSES. RAFAEL PHONE 2 was associated with the 7984 PHONE NUMBER. RAFAEL PHONE 2 was also associated with a WhatsApp account named "Robbinhood" consistent with the alias utilized by RAFAEL DAVILA.

**C.     RAFAEL PHONE 3**

24.     Investigators have commenced the preliminary review of RAFAEL PHONE 3 and located evidence of the TARGET OFFENSES. RAFAEL PHONE 3 was associated with the 6609 PHONE NUMBER, the FASTLIFE413 Snapchat Account, and the THEPARTCLOUD@GMAIL.COM email account discussed in the attached Exhibits. RAFAEL PHONE 3 was also associated with a WhatsApp account named "Robbinhood" consistent with the alias utilized by RAFAEL DAVILA.

25.     Investigators reviewed RAFAEL PHONE 3 and located evidence of the TARGET OFFENSES. RAFAEL PHONE 3 was associated with the 6609 PHONE NUMBER, the FASTLIFE413 Snapchat Account, and the THEPARTCLOUD@GMAIL.COM email account discussed in the attached Exhibits.

26.     During the course of reviewing RAFAEL PHONE 3 a conversation was observed between RAFAEL DAVILA (utilizing the 6609 number and the known alias robbinhood) and an unknown number (UNSUB 8651).  This conversation took place on WhatsApp regarding a trip to Columbia and subsequent proposition for his contact to ship pills to him.  Pertinent examples of the conversation follow.

| Date/Time | From | Body |
|---|---|---|
| 10/18/2021 11:42:58 PM | robbinhood | The pharmacy there sells pills for about $1 in American money |
| 10/18/2021 11:43:41 PM | robbinhood | I send you the money for them and I also give you $1 for each that you send me. |
| 10/18/2021 11:44:13 PM | robbinhood | I would like at least 300 at a time |

**D.     NICOLAS PHONE 1**

27.     Investigators have commenced the preliminary review of NICOLAS PHONE 1 and located evidence of the TARGET OFFENSES. Investigators reviewed the content of NICOLAS PHONE 1,

which was associated with a phone number ending in 7118. Investigators observed NICOLAS

PHONE 1 to be associated with a Snapchat account known to be used by Nicolas DAVILA named

"nickdagodd413", and other accounts associated with aliases believed to be used by Nicolas

DAVILA: Luke Bertelli, John Jones and Luca Doncic. In NICOLAS PHONE 1, investigators

observed a chat between NICOLAS DAVILA (utilizing the 413-654-7118 phone number and the

alias "Luke Bertelli") and an individual believed to be his sister (referred to as "E.D.") (utilizing

the 413-314-0014 phone number and listed under the "Emy" name).  This chat utilizes the Signal

application. Investigators are aware that Signal is described as an encrypted messaging service for

instant messaging, voice, and video calls.  Pertinent examples of the text messages follow with

explanatory notes provided by investigators:

| Date/Time | From | Body | Note |
|---|---|---|---|
| 1/2/2023 1:37:35 AM | Nicolas DAVILA | Hey | |
| 1/2/2023 1:37:59 AM | Emy | Got it | . |
| 1/2/2023 3:40:55 AM | Emy | You called | |
| 1/2/2023 7:56:48 PM | Emy | Hey. I talked to mom and I was telling her that you and [R] have to stick together. That's the only way to fight this thing. The cops are going to want you guys to go against each other. but sticking together is your only way at winning this case. remember, it was self-defense and you pulled that kids own gun on him after he tried to shoot you with it. Even if he already snitched and said it was you you guys can still fight with that you just have to stick together. | Referencing the 12/31/22 Murder. References speaking to mom (NICOLAS DAVILA is the brother of E.D.). Investigators have redacted the name of another individual charged in the incident, referring to him as "R" |
| 1/2/2023 7:57:37 PM | Emy | you know that they probably intimidated the shit out of [R] to say that you did this? Don't forget you guys are friends. Those guys are pieces of shit and these cops know it. | |

| 1/2/2023 10:17:56 PM | Luke Bertelli | I know I'm on the same thing | |

E.   **NICOLAS PHONE 2**

28.   Investigators have commenced the preliminary review of NICOLAS PHONE 2, and located evidence of the TARGET OFFENSES. NICOLAS PHONE 2 was associated with the 0421 PHONE NUMBER described in the Exhibits as being used by NICOLAS DAVILA. Additionally, NICOLAS PHONE 2 was associated with the "nickdagodd413" Snapchat account, and accounts utilizing the same Luca Doncic alias.

29.   While reviewing NICOLAS PHONE 2, investigators observed images of pressed white powder believed to be narcotics, stored on NICOLAS PHONE 2. These videos appear to be sent to and from NICOLAS DAVILA discussing the sale of narcotics.  Example images observed in NICOLAS PHONE 2 follow:

 

 

30.     Investigators identified a text message conversation between NICOLAS DAVILA

(utilizing the 413-330-0421 phone number) and an unknown individual (UNSUB 3148) relating

to the sale of narcotics. Pertinent examples of the text messages follow with explanatory notes

provided by investigators:

| Date/Time | From | Body | Notes |
|---|---|---|---|
| 05/31/22 3:15:55 | 413-221-3148 | What's good fam. Idk if you good already but if you ever looking for something I got whatever for 35 a G.. 120 a ball or 900 a oz or whatever I can't front rn but hit me if anything i live on Dickinson now | Attached IMG_0453.MOV Video of white pressed powder. |
| 5/31/2022 3:17:37 | Nicolas DAVILA | Word bro that's not bad I actually got the work too I been fuckin wit it for a while now | DAVILA relating he "got the work" or is also involved in the distribution of narcotics. |
| 5/31/2022 3:17:39 | Nicolas DAVILA | Straight fish too | Investigators believe this is in reference to "fish scale" a term for high quality cocaine. |

| | | | 67565989607__6648F2 56-3E32-4344-90BD-B979287D8432.MOV Image pictured above of white pressed powder |
|---|---|---|---|
| 5/31/2022 3:18:33 AM | Nicolas DAVILA | | |
| 5/31/202 2 3:20:52 AM | 413-221-3148 | | IMG_0816.MOV Image pictured above of white pressed powder. |

31.     During the course of reviewing NICOLAS PHONE 2, investigators observed images of NICOLAS DAVILA holding firearms.  Investigators also observed images of what appears to be a Springfield XD9 SC Mod 2 firearm, consistent with the make and model of the reported murder weapon. The image of the Springfield XD9 SC Mod 2 firearm bears metadata showing creation dates from prior to December 31, 2022. Example images follow below.



IMG_2865.heic; metadata showing 12/26/2022; firearm appears consistent with a Springfield XD9 SC Mod 2 firearm



IMG_2863.HEIC   12/26/2022 10:18:01 AM



IMG_7087.heic; metadata showing 7/20/2022; firearm appears consistent with a Springfield XD9 SC Mod 2 firearm






IMG_2868.hric; metadata showing 12/26/2022; firearm appears consistent with a Springfield XD9 SC Mod 2 firearm





**F.      NICOLAS PHONE 3**

32.      Investigators have commenced the preliminary review of NICOLAS PHONE 3, and located evidence of the TARGET OFFENSES. NICOLAS PHONE 3 was associated with the 0421 PHONE NUMBER described in the Exhibits as being used by NICOLAS DAVILA.

33.      During the course of reviewing NICOLAS PHONE 3, investigators observed images of NICOLAS DAVILA holding multiple firearms.  These images follow.



**CONCLUSION**

34.     Based on the fact that the TARGET PHONES are in the custody of the FBI, I am requesting authority to conduct the searches at any time of day or night.

35.     Based on the foregoing, there is probable cause to believe that the TARGET PHONES contain evidence of the TARGET OFFENES and that the TARGET PHONES are instrumentalities of the TARGET OFFENSES, as further described in Attachment B.


Sworn under the penalties of perjury to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 on ___**Sep 5, 2023**___.

_____
Special Agent Tyler Deroune
Federal Bureau of Investigation


Sworn to telephonically in accordance with Federal Rule of Criminal Procedure 4.1 on

___**Sep 5, 2023**___.

_____
HON. JUDITH G. DEIN
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A-1**
**Property to Be Searched**

Red iPhone 13 with black case, Model: A2482, SN: L9XM59DN90, FBI # 1B72, bearing IMEI 358469528534634, seized from 799 S. West Street, Feeding Hills, MA, believed to be owned and utilized by Rafael DAVILA, currently located at 201 Maple Street, Chelsea, Massachusetts (the TARGET DEVICE).

Photographs of the TARGET DEVICE follow:



**ATTACHMENT A-2**
**Property to Be Searched**

Black iPhone 7 in black case, Model: A1660, SN: F4GT47NDHG6W, FBI # 1B73, bearing IMEI 355833080664886, seized from 799 S. West Street, Feeding Hills, MA, believed to be owned and utilized by Rafael DAVILA, currently located at 201 Maple Street, Chelsea, Massachusetts (the TARGET DEVICE).

Photographs of the TARGET DEVICE follow:



**ATTACHMENT A-3**
**Property to Be Searched**

Gray iPhone 11, Model: A2111, SN: DNPC25B0N72J, FBI # 1B101, bearing IMEI 356550105737625, seized from 799 S. West Street, Feeding Hills, MA, believed to be owned and utilized by Rafael DAVILA, currently located at 201 Maple Street, Chelsea, Massachusetts (the TARGET DEVICE).

Photographs of the TARGET DEVICE follow:



**ATTACHMENT A-4**
**Property to Be Searched**

Black iPhone 11 in black case, Model: A2111, SN: FFWJ9T2DN72J, FBI # 1B132, bearing IMEI 352563740567228 seized from 163 Trafton Street, Springfield, MA, believed to be owned and utilized by Nicolas DAVILA, currently located at 201 Maple Street, Chelsea, Massachusetts (the TARGET DEVICE).

Photographs of the TARGET DEVICE follow:



**ATTACHMENT A-5**
**Property to Be Searched**

a Black iPhone X in black case, Model: A1865, SN: DNPVTFV0JCL6, FBI # 1B136, bearing IMEI 353055090300465, seized from 163 Trafton Street, Springfield, MA, believed to be owned and utilized by Nicolas DAVILA currently located at 201 Maple Street, Chelsea, Massachusetts (the TARGET DEVICE)

Photographs of the TARGET DEVICE follow:



**ATTACHMENT A-6**
**Property to Be Searched**

a Pink iPhone 7 Plus, Model: A1784, SN: FCGTW29GHG07, FBI # 1B144, bearing IMEI 353818088899248, seized from 163 Trafton Street, Springfield, MA, believed to be owned and utilized by Nicolas DAVILA currently located at 201 Maple Street, Chelsea, Massachusetts.

Photographs of the TARGET DEVICE follow:



**ATTACHMENT B**

I.        All evidence, in whatever form, for the periods of January 1, 2020 through April 12, 2023, including records and data that constitute evidence, fruits, or instrumentalities of violations of 18 U.S.C. §§ 371, 2312, 2314, 2315 (interstate transportation of vehicles, interstate transportation of stolen property and receipt of stolen property in interstate commerce), 18 U.S.C. § 2113(b) (theft from a federally insured bank), 18 U.S.C. §§ 1956, 1957 (money laundering and expenditure of funds derived from suspected unlawful activity), 18 U.S.C. §§ 922(g) (felon in possession of a firearm), 922(n) (possession of a firearm while facing criminal charges carrying a penalty exceeding one year), 922(k) (possession of a stolen firearm), 924(c) (use and carrying of a firearm during and in relation to a drug crime or crime of violence) 924(o) (conspiracy to use and carrying of a firearm during and in relation to a drug crime or crime of violence); 18 U.S.C. § 1962 (racketeering and conspiracy to conduct enterprise affairs through a pattern of racketeering activity); 21 U.S.C. §§ 841 and 846 (relating to distribution of controlled substances, and conspiracy to distribute controlled substances), (hereinafter the "TARGET OFFENSES"), including photographs, communications, and video files, pertaining to the TARGET OFFENSES, and specifically including records and data related to:

A.        The identities of any members, leaders and associates of the enterprise;

B.        Identification of racketeering acts and crimes being committed by members of the enterprise;

C.        Methods of communication between members of the enterprise;

D.        Any controlled substances, including fentanyl, pills, heroin, marijuana, cocaine, and cocaine base;

E.        Firearms, ammunition, and any documents and items related to firearms and ammunition, including manuals, storage containers, receipts, invoices, literature, targets, shell casings, firearms accessories, selector switches, magazines, scopes, silencers, and other items made for or anticipated to be used in conjunction with firearms;

F.        communications, images and videos, concerning firearms, ammunition, and any documents and items related to firearms and ammunition, including manuals, storage containers, receipts, invoices, literature, targets, shell casings, firearms accessories, magazines, scopes, silencers, and other items made for or anticipated to be used in conjunction with firearms;

G.        communications, photographs and video and audio recordings which document an association with other co-conspirators and/or which display controlled substances, firearms, ammunition, acts of violence, threats of violence, and chemicals/materials, mechanisms, packaging and adulterants used in the manufacturing and distribution of controlled substances

H.        photographs of and references to materials, chemicals, equipment and paraphernalia associated with the manufacturing, ordering, packaging, importation, possession, purchase, storage, distribution, and/or transportation of controlled substances, including, but not limited to, scales, packaging materials, storage bins, containers, cutting agents, and scales;

I.   manufacturing, ordering, possession, purchase, storage, distribution, and/or transportation of controlled substances, including records of sales, records of purchases, log books, pill/tablet presses, drug ledgers, personal telephone/address books containing the names of purchasers and suppliers of controlled substances used to manufacture controlled substances, electronic organizers, Rolodexes, telephone bills, telephone answering pads, bank and financial records, and storage records, such as storage unit and storage locker receipts and safety deposit box rental records and keys

J.   laundering of proceeds of drug trafficking and theft crimes, including, concealment of the true source of funds, promotion of drug trafficking and theft crimes, false statements concerning legitimate sources of income, the presence (or absence of paystubs substantiating income), receipts and records of items purchased, real estate transaction records, automobile transaction records, procurement of video and music creation, production, and editing services, jewelry and fine metal transaction records, the manner and means by which items and necessities are paid for on daily basis and while traveling, transactions in cash and other monetary instruments,, records reflecting transactions at casinos, flights and airline travel, hotels and rental expenditure, jewelry, chains, bracelets, diamonds, credit cards, debit cards, money orders, and other instruments by which cash proceeds can be transacted and converted into good and services;

K.   the identity of persons occupying, possessing, residing in, owning, frequenting or controlling physical premises including keys, rental agreements and records, property acquisition records, utility bills and receipts, photographs, answering machine tape recordings, telephones, vehicle and/or vessel records, canceled mail envelopes, correspondence, financial documents such as tax returns, bank records, safety deposit box records and keys, storage unit records and keys, canceled checks, and other records of income and expenditure, credit card records, travel documents, and personal identification documents;

L.   methods of communications between co-conspirators, rivals, or victims including the telephone numbers, messaging applications, and social media accounts used, including those used by Rafael DAVILA, Jose TORRES, Nicolas DAVILA, Santo FELIBERTY, Alex OYOLA, Carlos FONSECA, and Zachary MARSHALL;

M.   communications between co-conspirators regarding catalytic converter thefts, burglaries, and the TARGET OFFENSES.

N.   acts taken or statements made by co-conspirators during or in furtherance of the conspiracy;

O.   communications, photographs and video and audio recordings which document an association with other co-conspirators and/or which display information and instances relevant to catalytic converter thefts, burglaries, and the TARGET OFFENSES

P.   laundering of proceeds of interstate theft and transportation of stolen property, through concealment of the true source of funds, promotion of the crimes, false statements concerning legitimate sources of income, the presence (or absence of paystubs substantiating income), receipts and records of items purchased, real estate transaction records, automobile transaction records, jewelry and fine metal transaction records, the manner and means by which items and necessities are paid for, transactions in cash and other monetary instruments, sports betting records, betting slips, records reflecting

transactions at casinos, jewelry, chains, bracelets, diamonds, credit cards, debit cards, money orders, and other instruments by which cash proceeds can be transacted and converted into good and services;

Q.     purported employers, or lack of employment for Rafael DAVILA, Jose TORRES, Nicolas DAVILA, Santo FELIBERTY, Alex OYOLA, Carlos FONSECA, and Zachary MARSHALL;

R.     The historical whereabouts, locations or travels of any leaders, members, associates, co-conspirators, including Rafael DAVILA, Jose TORRES, Nicolas DAVILA, Santo FELIBERTY, Alex OYOLA, Carlos FONSECA, and Zachary MARSHALL

S.     Locations and physical premises where evidence of the TARGET OFFENSES, and things of value are being stored and concealed, including storage units, safe deposit boxes, rental units, lockers, and properties.

T.     Photographs of and references to tools, Sawzalls, bolt cutters, reciprocating saws, gloves, blades, headlamps, masks, hammers, saws, pipe cutters, and other items utilized in the cutting of catalytic converters, ATM theft, car theft, and burglary;

U.     The December 31, 2022, murder of Geovanni Saldana, including identities of the persons involved and targeted, motivations for the murder, planning and coordination of the murder, communication between participants and planners of the crime, acts to conceal the identity of the assailants and complete the crime without police knowledge of those involved, procurement of weapons and instrumentalities, disposal of evidence and instrumentalities, the current whereabouts of pertinent digital and physical evidence related to this incident, and any other information related to the murder;

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## DEFINITIONS

For the purpose of this warrant:

A.     "Equipment" means any computer hardware, computer software, mobile phone, storage media, and data.

B.     "Hardware" means any electronic device capable of data processing (such as a computer, smartphone, cell/mobile phone, or wireless communication device); any peripheral input/output device (such as a keyboard, printer, scanner, monitor, and drive intended for removable storage media); any related communication device (such as a router, wireless card, modem, cable, and any connections), and any security device, (such as electronic data security hardware and physical locks and keys).

C.     "Computer software" means any program, program code, information or data stored in

any form (such as an operating system, application, utility, communication and data security software; a log, history or backup file; an encryption code; a user name; or a password), whether stored deliberately, inadvertently, or automatically.

D.      "Storage media" means any media capable of collecting, storing, retrieving, or transmitting data (such as a hard drive, CD, DVD, or memory card).

E.      "Data" means all information stored on storage media of any form in any storage format and for any purpose.

F.      "A record" is any communication, representation, information or data.  A "record" may be comprised of letters, numbers, pictures, sounds or symbols.

**RETURN OF SEIZED COMPUTER EQUIPMENT**

If the owner of the seized equipment requests that it be returned, the government will attempt to do so, under the terms set forth below.  If, after inspecting the seized equipment, the government determines that some or all of this equipment does not contain contraband or the passwords, account information, or personally-identifying information of victims, and the original is no longer necessary to retrieve and preserve as evidence, fruits or instrumentalities of a crime, the equipment will be returned within a reasonable time, if the party seeking return will stipulate to the authenticity of a forensic copy (but not necessarily relevancy or admissibility) for evidentiary purposes.

If equipment cannot be returned, agents will make available to the computer system's owner, within a reasonable time period after the execution of the warrant, copies of files that do not contain or constitute contraband; passwords, account information, or personally-identifying information of victims; or the fruits or instrumentalities of crime.

For purposes of authentication at trial, the Government is authorized to retain a digital copy of all equipment seized pursuant to this warrant for as long as is necessary for authentication purposes.